Filed 6/6/22  P. v. Pittman CA2/6
Opinion following rehearing

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CLYDE OZELL PITTMAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B310483<br>(Super. Ct. No. KA124007)<br>(Los Angeles County)<br><br>OPINION ON REHEARING |

Clyde Ozell Pittman appeals the judgment entered after a jury convicted him of arson of a structure (Pen. Code,[1] § 451, subd. (c)) and making criminal threats (§ 422, subd. (a)).  In a bifurcated proceeding, appellant admitted that he had a prior strike and serious felony conviction (§§ 667, subds. (a)-(j), 1170.12, subd. (b)).  The trial court sentenced him to an aggregate term of nine years and four months in state prison, consisting of the midterm of four years for the arson doubled for

_____

[1] All statutory references are to the Penal Code.

the strike prior, plus sixteen months (one-third the midterm doubled) for the criminal threat.

Appellant filed briefs contending the court erred in failing to give a unanimity instruction (CALCRIM No. 3500) on the criminal threats count, and in accepting the jury's verdict in appellant's absence rather than granting a continuance. After we issued our decision affirming the judgment, we granted appellant's petition for rehearing on the issue whether he is entitled to resentencing in light of Assembly Bill No. 124 (2021-2022 Reg. Sess.; hereinafter AB 124), which went into effect while this appeal was pending. The People agree that appellant is entitled to resentencing under the new legislation, and we shall order the matter remanded accordingly.

**FACTS AND PROCEDURAL HISTORY**

At about 5:30 p.m. on January 27, 2020, appellant's mother Genevieve Urzua was at home with her husband when she saw a bright light around her front door. Urzua opened the door and saw flames. She closed the door, called 911, and left the house through the back door. Neighbors helped her extinguish the fire with a garden hose.

Los Angeles County Sheriff's Detective Alex Miller went to Urzua's residence in response to the 911 call. The front door and door frame were charred and there was a partially filled gas can on the front lawn. Based on his training and experience, Detective Miller concluded that the fire was deliberately started. When interviewed, Urzua and her husband said they had no idea who might have started the fire.

The following morning, Urzua spoke with appellant on the telephone and asked him "why did you try to burn me?" Appellant replied with a text stating, "That's what you get. You didn't learn." At 3:34 p.m. that afternoon, appellant sent Urzua

text messages stating "Identity theft is hard, but I'm in your backyard" and "I'm coming for you G. . . . asleep, please or at work."[2] At 3:48 p.m., appellant You fucked up. Coming for you" and "sleeping." At 4:12, he texted "You all die."

Urzua called Detective Miller and left a voicemail stating that appellant had essentially admitted starting the fire and was sending her text messages threatening to harm her and her family. Urzua urged the detective not to "wait til (*sic*.) another burn of some kind happens or somebody is killed" and added that appellant "needs to get off the streets and get mental health." When Detective Miller spoke to Urzua on the phone, she was extremely upset and agitated and said something to the effect "I'm afraid he's going to do something to me or the family. He's going to harm me or light another fire." Appellant was subsequently located and arrested.

## DISCUSSION

### *Unanimity Instruction (CALCRIM No. 3500)*

Appellant contends the trial court prejudicially erred in failing to give a unanimity instruction (CALCRIM No. 3500)[3] on the criminal threats charge. We are not persuaded.

"[C]ases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "'The prosecution can make an election by "tying each

---

[2] "G" and "Gina" referred to appellant's sister Legina.

[3] CALCRIM No. 3500 states: "The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree . . . on which act (he/she) committed."

specific count to specific criminal acts elicited from the victims' testimony"—typically in opening statement and/or closing argument. [Citations.] [¶] Under these principles, there is an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it.' [Citation.]" (*People v. Brugman* (2021) 62 Cal.App.5th 608, 627.)

A trial court has a sua sponte duty to give a unanimity instruction when "'there is a risk the jury may divide on two discrete crimes and not agree on any particular crime.'" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 878.) There are exceptions to this rule. As relevant here, no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which "arises in two contexts. [Citation.] '"The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.] The second is when . . . *the statute* contemplates a continuous course of conduct of a series of acts over a period of time."'" (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 572.) There also is no need for a unanimity instruction if "'the defendant offered the same defense to both acts constituting the charged crime, so no juror could have believed defendant committed one act but disbelieved that he committed the other, or because "there was no evidence from which the jury could have found defendant was guilty of" the crime based on one act but not the other.'" (*Covarrubias*, at p. 879, citing *People v. Davis* (2005) 36 Cal.4th 510, 562.)

Here, the prosecutor repeatedly told the jury during closing argument that the criminal threats charge was based on appellant's text messages to Urzua stating "You fucked up. I'm coming for you" and "You will die." Moreover, these statements formed a continuous course of conduct because they were all

4

made over the course of 24 minutes. (Compare *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1535-1536 [unanimity instruction required in criminal threats case where defendant made threatening statements two hours apart and the prosecutor did not expressly elect either act as basis for charge].) Appellant also offered the same defense for each statement, i.e., that he did not intend for the statements to be taken as threats and that Urzua was not placed in fear by them. Finally, there was no evidence from which the jury could have found appellant guilty of making criminal threats based on one of the statements but not the others.

In asserting otherwise, appellant misplaces his reliance on *People v. Salvato* (1991) 234 Cal.App.3d 872. The court in that case considered whether a unanimity instruction was required where the defendant made a series of criminal threats against the victim over a period of 16 months and through a variety of media. Factually, the threats did not comprise a continuous course of conduct because they were separated in time and different in kind. The *Salvato* court considered whether the criminal threats statute itself defined the offense as one involving a continuous course of conduct and determined that the statute refers to a single act taken at a particular moment in time. (*Id.* at pp. 882-883.) The court concluded the trial court should have required the prosecution to elect a particular threat on which it relied to prove the offense. (*Id.* at p. 884.)

*Salvato* is inapposite because appellant's threatening statements occurred twenty-four minutes apart on a single day. Because the statements were so closely connected, they comprised a continuous course of conduct. (*Salvato*, *supra*, 234 Cal.App.4th at p. 882.) Moreover, the prosecutor repeatedly identified the statements upon which the criminal threats charge

5

was based. A unanimity instruction was thus not required. Because appellant offered the same defense to each of his statements and the jury plainly rejected that defense, any error in failing to give the instruction was also harmless beyond a reasonable doubt. (*People v. Covarrubias*, *supra*, 1 Cal.5th at pp. 879-880; *People v. Wolfe* (2003) 114 Cal.App.4th 177, 185-188.)[4]

### *Receiving Of Verdict In Appellant's Absence*

Appellant also contends the court violated his statutory and constitutional rights by accepting the jury's verdict in appellant's absence rather than granting a continuance. We disagree.

Criminal defendants have a right to be personally present at certain pretrial proceedings and at trial under various provisions of law, including the confrontation clause of the Sixth Amendment to the United States Constitution, the due process clause of the Fourteenth Amendment to the United States Constitution, and section 15 of article I of the California Constitution. (*People v. Cole* (2004) 33 Cal.4th 1158, 1230.) More specifically, a defendant has a "constitutional right to be present at all critical stages of the criminal prosecution, i.e., 'all stages of the trial where his absence might frustrate the fairness of the proceedings' [citation], or 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" (*People v. Rodriguez* (1998) 17 Cal.4th 253, 260.)

---

[4] Appellant also asserts that "neither . . . continuous course of conduct exception remains valid" in light of *Ramos v. Louisiana* (2020) __ U.S. __, 140 S.Ct. 1390 [206 L.Ed.2d 583], which held that the Sixth Amendment's right to a jury trial requires a unanimous verdict in both state and federal court. Suffice to state that nothing in *Ramos* supports such an assertion.

Our Supreme Court has recognized, however, that the right to be present is not without limits.  For example, "'[u]nder the Sixth Amendment's confrontation clause, a criminal defendant does not have a right to be personally present at a particular proceeding unless his appearance is necessary to prevent "interference with [his] opportunity for effective cross-examination."'"  (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1039 (*Lewis and Oliver*).)  "'[U]nder the Fourteenth Amendment's due process clause, a criminal defendant does not have a right to be personally present at a particular proceeding unless he finds himself at a "stage . . . that is critical to [the] outcome" and "his presence would contribute to the fairness of the procedure."  [Citation.]'"  (*Ibid.*)  Under the California Constitution, "'a criminal defendant does not have a right to be personally present "[for] matters as to which [his] presence does not bear a "'reasonably substantial relation to the fullness of his opportunity to defend against the charge."'"  [Citations.]'"  (*Ibid.*)  Moreover, California statutory law expressly provides that a verdict in a felony trial may be received in the defendant's absence in the interest of justice.  (§ 1148; *Lewis and Oliver*, at pp. 1039-1040.)

When the jury reached its verdict on November 23, 2020, appellant was in COVID quarantine at the county jail.  The court stated:  "[Defense counsel] is suggesting that we bring the jury back for December 7th . . . in hopes that [appellant] will be definitely available on that date. . . .  The issue is determining whether or not our jurors will be available on December 7th for purposes of unsealing the verdict, and if one or two are unavailable, then we may have to reevaluate our options."

After the jury confirmed it had reached a verdict, the verdict was delivered to the court and sealed.  The court then

asked the jurors and alternates "is there anyone amongst you going to be unavailable . . . on December 7th for a morning session." Juror No. 7 replied that he "ha[d] reservations to be in Virginia at that time" and would not be returning until "[m]id January."

After discussing the matter with counsel outside the jury's presence, the court stated: "I think what I'm going to do is go ahead and take the verdict in the absence of [appellant]; although I still find that it is a critical stage, he definitely has a constitutional right to be present. But the fact of the matter is that the jury has decided the case. . . . [Appellant], through no fault of his own, is unavailable, but the court cannot see its way clear to delaying this verdict into January of next year so all deliberating jurors . . . quite frankly, I don't know if all deliberating jurors will be available even in January when we would have to reunite; so I'm going to just go ahead and bite the bullet and make that decision . . . ." The court also reasoned that waiting until January to read the verdict created a "danger . . . , in the event [appellant] is acquitted by this jury, that he would definitely be seriously over detained in custody."

The court did not err. Receiving the verdict in appellant's absence was proper because "a delay in announcing the verdict might have disrupted the proceedings or resulted in the loss of jurors." (*Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1040.) Moreover, "[t]he court risked 'exacting a heavy toll' on the jury if it had to wait for an uncertain or extended period to deliver its verdict." (*Ibid*.)

In any event, any error in receiving the verdict in appellant's absence would not compel reversal. As we have noted, criminal defendants have no right to be present for matters at which their presence does not bear a substantial

8

relationship to the fullness of their opportunity to defend against the crimes with which they are charged. (*Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1039.) There was no such relationship here because the jury had reached a verdict and nothing remained but for it to be read. As the People put it, "appellant's opportunity to defend against the charges was already over by the time the jury had completed deliberations." Accordingly, any error in receiving the verdict in appellant's absence was harmless regardless of the standard of review.[5]

### *AB 124*

In October 2021 the Governor signed AB 124, which became effective January 1, 2022. Among other things, AB 124 creates a presumption that the trial court will impose the low term under enumerated circumstances, such as where an offender's childhood trauma and youth were contributing factors to the offense. (§ 1170, subd. (b)(6)(A); Stats. 2021, ch. 695, § 5.3.)[6] In his petition for rehearing, appellant contends that this

---

[5] For the first time on appeal, appellant also claims the court erred in failing to consider the possibility that appellant might be able to appear virtually for the reading of the verdict. This claim was not raised below so it is forfeited. In any event, nothing in the record indicates that such an appearance would have been feasible given that appellant was under a COVID quarantine.

[6] During the 2021-2022 legislative term, three bills proposing changes to section 1170 were introduced: AB 124 (Stats. 2021, ch. 695, § 5), Assembly Bill No. 1540 (Stats. 2021, ch. 719, § 2), and Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3). All three bills were passed by the Legislature in September 2021, and approved by the Governor and filed with the Secretary of State on October 8, 2021. Senate Bill No. 567 bears the highest

legislative change applies retroactively to him and the People agree.

Under *In re Estrada* (1965) 63 Cal.2d 740, "[w]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*People v. Brown* (2012) 54 Cal.4th 314, 323, fn. omitted.) This presumption has been extended to amendments providing trial courts discretion to impose lesser punishment at sentencing and amendments reducing the possible punishment for classes of persons. (See, e.g., *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303-304.) Nothing in AB 124 suggests any legislative intent that the amendment apply prospectively only, and appellant's case is not yet final. (*People v. Vieira* (2005) 35 Cal.4th 264, 306.) Accordingly, he is entitled to retroactive application of the new law. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039; *People v. Lopez*, 2022 Cal.App.Lexis 398, *8; *People v. Banner* (2022) 77 Cal.App.5th 226, 243-244.)

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.

---

chapter number and is presumed to be the last of the three approved by the Governor. (Gov. Code, § 9510.) Accordingly, Senate Bill No. 567 prevails over AB 124. (Gov. Code, § 9605, subd. (b).) To the extent there are conflicts between the three bills, Senate Bill No. 567 takes precedence. (*In re Thierry S.* (1977) 19 Cal.3d 727, 738-739.) As to subdivision (b)(6)(A) of section 1170, however, the substantive language in AB 124, Senate Bill No. 1540, and Senate Bill No. 567 are not in conflict. For ease of discussion, we refer to AB 124 rather than Senate Bill No. 567.

[Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.]  In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)  That showing is not made here, so a remand for full resentencing is warranted.  (See *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.)

## DISPOSITION

The judgment of conviction is affirmed.  The matter is remanded for resentencing in light of the legislative changes effected by AB 124.

NOT TO BE PUBLISHED.

PERREN, J.

I concur:

TANGEMAN, J.

11

YEGAN, Acting P.J., Concurring and Dissenting:

Insofar as the majority affirms the convictions, I concur. But I dissent from the remand for resentencing. *In re Estrada* (1965) 63 Cal.2d 740, can be stretched only so far. Here, there is no actual lessening of punishment as was the case in *Estrada*. Now, by reason of the new statute, there is only an opportunity to seek lesser punishment. The People concede but this is based upon a single hearsay statement that appellant may have been molested as a child. This is, in my opinion, a very thin reed to support a new sentencing hearing.

Assuming, without deciding, that there is error and the new statute applies retroactively, I cannot, and do not, "opine" that there has been a miscarriage of justice. (Cal. Const. art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Breverman* (1998) 19 Cal.4th 142, 173-174.) Any error is harmless and this type of sentencing error is subject to a harmless error analysis. (*People v. Flores* (2022) 75 Cal.App.5th 495, 500, citing inter alia, *People v. Sandoval* (2007) 41 Cal.4th 825, 838.) I am not persuaded that there should be a resentencing hearing. A remand for resentencing is an exaltation of form over substance.

This case is aggravated. Appellant is a "second striker" and could have easily been sentenced to the upper term. Appellant intended more than a simple arson of his mother's house. The inference is compelling that he intended to kill his mother and her husband. How do I know this? He threatened to kill them after the arson.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

1

Mike Camacho, Jr., Judge
Superior Court County of Los Angeles

_____

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and David E. Voet, Deputy Attorney General, for Plaintiff and Respondent.